"Exhibit A"

## IN THE UNITED STATES DISTRICT COURT
## OF THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

ENCON INTERNATIONAL, INC.         )
                                  )
           PLAINTIFF              )
                                  )
v.                                )          Case No. 3:10-CV-335
                                  )
LINDA GARRAHAN, INDIVIDUALLY,     )
BRIAN GARRAHAN, INDIVIDUALLY,     )
QUANTUM PARTNERS, INC., AND       )
1ST CAPITAL LENDING FUND, INC.    )
                                  )
           DEFENDANTS             )

## PLAINTIFF ENCON INTERNATIONAL, INC.'S
## FIRST AMENDED COMPLAINT

Encon International, Inc. ["Encon"], Plaintiff hereby submits this First Amended Complaint against Linda Garrahan, Brian Garrahan, Quantum Partners, Inc. ["Quantum"] and 1st Capital Lending Fund, Inc., ["1st Capital"] defendants and for cause of action would show as follows:

### Parties

1.      Encon International is a Texas corporation which may be served with service of process at 7307 Remcon Circle, Suite 103, El Paso, TX 79912. Encon is a service disabled veteran owned small business as recognized by the United States Small Business Administration.

2.      Linda Garrahan is an individual residing in the State of Florida whose last known residence is 912 NW 2nd Avenue 912, Delray Beach, Florida 33444-2935.

3.     Brian Garrahan is an individual residing in the State of Florida whose last known residence is 912 NW 2nd Avenue 912, Delray Beach, Florida 33444-2935.

4.     Quantum Partners, Inc. is a Florida corporation which may be served with service of process by serving its registered agent, Brian Garrahan at 301 Yamato Road, 2121, Boca Raton, Florida 33431.

5.     1st Capital is a Florida corporation, which may be served with service of process by serving its registered agent, Brian Garrahan at 301 Yamato Road, 2121, Boca Raton, Florida 33431 .

6.     All Defendants have made an appearance herein; therefore, no further service of process is necessary at this time.    Linda Garrahan, Brian Garrahan, Quantum Partners, Inc., and 1st Capital shall be collectively referred to as the "Defendants."

<strong><u>Jurisdiction</u></strong>

7.     This Court has diversity subject matter jurisdiction under 28 USC §1332, as the Plaintiff is diverse from all Defendants and the amount in controversy exceeds $75,000.00.    This Court has personal jurisdiction over Defendants because they have substantial and continuing contacts with the State of Texas by virtue of having benefitted from doing business with Plaintiff in the State of Texas.

8.     This Court maintains personal jurisdiction over these Defendants because the Defendants have, among other things, engaged in the sale of insurance products within the State of Texas to Texas residents which are regulated by the Texas Insurance Code.  In particular, Defendants conspired to sell and did sell both a performance and

2

payment bond to Encon.   Further, in addition to not being licensed to sell insurance in the State of Texas, Defendants have committed other violations of the Texas Insurance Code by their conduct of business in Texas.

9.      Pursuant to Chapter 101 of the Texas Insurance Code, courts are instructed that the Texas Legislature recognizes a strong public policy for allowing Texas residents to maintain causes of action in Texas against out-of-state individuals or companies which engage in selling insurance products to Texas residents; and, that any such activity, even by a single event, should be recognized as engaging in those minimum contacts necessary for establishing personal jurisdiction in Texas courts.

§. 101.001.  STATE POLICY AND PURPOSE.

(a) It is a state concern that many residents of this state hold insurance policies issued by persons or insurers who are not authorized to do insurance business in this state and who are not qualified as eligible surplus lines insurers under Chapter 981.    These residents face often insurmountable obstacles in asserting legal rights under the policies in foreign forums under unfamiliar laws and rules of practice

. . . .

(c) The purpose of this chapter is to subject certain insurers and persons to the jurisdiction of :

. . . .

(2) the courts of this state in suits by or on behalf of the state or an insured or beneficiary under an insurance contract.

§ 101.051.  CONDUCT THAT CONSTITUTES THE BUSINESS OF INSURANCE

. . . .

(b) The following acts in this state constitute the business of insurance in this state:

(1) making or proposing to make, as an insurer, an insurance contract;

(2) making or proposing to make, as guarantor or surety, a guaranty or suretyship contract as a vocation and not merely incidental to another legitimate business or activity of the guarantor or surety;[1]

(3) taking or receiving an insurance application; or,

(4) receiving or collecting any consideration for insurance, including:

(A) a premium...

10.     Personal jurisdiction also exists because Encon's causes of action arise out of specific conduct by Defendants that occurred within the State of Texas.  Specifically, Defendants sought and conducted an extensive on-site audit of Encon's financial records at Encon's offices in El Paso, Texas during the latter part of February of 2010.  Based upon the purported findings of this audit, Defendants now claim they are justified in withholding over $400,000.00 from Encon.  Defendants have also referred to this audit for purposes of alleging that Encon was in default under a General Agreement for Indemnity that was executed by and between Encon and Defendants.

11.     Prior to this on-site audit at Encon's place of business in Texas, defendant's sought and received (from  Encon in Texas) numerous documents relating to Encon's ongoing business and financial records, both as to the contract made a basis of this suit; and, other contracts under which Encon has been operating.

---

[1] With reference to defendant's vocation, it is clear from defendant's web site that Surety contracts are a part of their regular business.  *See www.quantumpartnersinc.com*

12.     Necessary minimum contacts are also present due to the fact that there have been voluminous, ongoing and systematic contacts by mail, phone and e-mail from Defendants to Encon at Encon's place of business in El Paso, Texas.  Further, all of Encon's communications with Defendants have been conducted from Encon's place of business in El Paso, Texas.  These business related communications started in 2008 and continued on numerous different occasions through 2010.  By such communications, Defendants demanded and secured the delivery of various documents, corporate records and very substantial sums of money.  Further, all of Defendant's threats, demand letters and notices of default, as set forth below, were delivered and/or transmitted to Encon at Encon's place of business in El Paso, Texas.

13.     Defendants have also engaged in deceptive trade practices in Texas and committed numerous torts, including fraud, conspiracy to commit fraud and conversion as set forth herein.

### Venue.

14.     Venue is proper before this course because all or a substantial part of the events which give rise to those causes of action set forth herein took place in El Paso, Texas.

### Factual Background

15.     Plaintiff Encon is a small, veteran-owned federal contractor located in El Paso, Texas.  On or about November 1, 2008, Encon was awarded contract number EP-R7-08-14 in the total amount of $4,766,732.65 by the United States Environmental Protection Agency ["the Contract"].  Under the Contract, EPA sought to procure

5

environmental remediation services to remediate certain lots of contaminated soil in Cherokee County, Kansas.

16.     Because the Contract requires the performance of construction services, the Contract was subject to the requirements of the Miller Act, 41 USC § 3131 et seq.  Under the Miller Act, federal construction prime contractors are required to post payment bonds for the protection of mechanics and material men who furnish labor or materials for the project, and are required to post performance bonds for the protection of the United States to ensure completion of the contract.  It was a requirement of Encon's contract with the United States that it furnish such bonds.

17.     In satisfaction of that requirement, Encon obtained payment and performance bonds from Defendants.  Defendants have held themselves out to be an investment firm that regularly issues surety bonds for federal, state and local construction projects.

18.     The payment bond furnished by Defendants was an individual surety bond in the name of defendant, Linda Garrahan.  In support of that payment bond, Ms. Garrahan submitted an affidavit of individual surety, stating under oath that she was the individual surety, that she was employed by "REOMT, LLC c/o 1st Capital Lending Trust".  She further stated in the affidavit that she was pledging as assets in support of the surety bond:

> A lien, in favor of US EPA, in the amount of $2,383,186.00 against Real Property, located at Southeast Quarter (1/4) Section 9 of Township 12 South, Range 71 East, Lincoln County, state of Nevada, USA, as evidenced by the attached supporting documents.

6

19.     The supporting documents consisted of an appraisal prepared by Mr. Clive Runnels Wellman of Aventura, Florida.  This appraisal opined that the property upon which the surety bond lien had been placed had a "net present market value" of $47 billion ($47,000,000,000.00), and attached an appraisal report.  The report indicated that the property was located 6.6 miles north of Mesquite, Nevada, or approximately 90 miles northeast of Las Vegas, Nevada.  The report indicated that the property consisted of "low lying hills" and "rolling scrub land".  The basis for the appraisal's evaluation was potential gold mining, alternative energy or resort development of the property.  None of these activities were indicated to be presently ongoing on the property in the appraisal report.

20.     In consideration of the issuance of the Miller Act performance and payment bonds for the project, Encon initially paid defendant Linda Garrahan a bond premium of $190,655.00 for both bonds.  This bond premium represented 4% of the Contract amount.

21.     In connection with the issuance of the Miller Act performance and payment bonds, Encon and defendant Linda Garrahan entered into an agreement entitled "General Agreement of Indemnity" ["the GAI"] on or about September 30, 2008.  Under the GAI, Mr. Alex Woelper and Ms. Shu-Fei Woelper, owners of Encon, agreed to guarantee Encon's obligations as Principal on the bonds.

22.     As is typical for such agreements, the GAI contained comprehensive indemnity provisions requiring Encon and the guarantors to indemnify defendant Linda Garrahan for any losses, attorneys' fees or other expenses incurred as a result of claims

7

made upon either the payment or performance bond.    The GAI further provided as follows:

> B.    The PRINCIPAL and INDEMNITORS shall make payment to the SURETY as soon as liability exists or is asserted against the SURETY, or upon the demand of SURETY, whether or not the SURETY shall have made any payment therefore. Such payment shall be either equal to the amount of any reserve set by the SURETY, or equal to such amount as the SURETY, in its sole judgment, shall deem sufficient to protect it from loss. The SURETY shall have the right to use the payment, or any part thereof, in payment or settlement of any liability, loss, cost or expense for which PRINCIPAL or the INDEMNITORS would be obligated to indemnify the SURETY under the terms of this Agreement.

23.    With respect to accounting and records, the GAI provided in Article XI as follows:

> XI.    BOOKS AND RECORDS.    At any time, and until such time as the liability of the SURETY under all GUARANTEES is terminated or SURETY is fully reimbursed all amounts due to it under this Agreement, the SURETY shall have the right of access to the books, records, accounts and documents of the PRINCIPAL and INDEMNITORS, wherever located, for the purpose of inspection, copying or reproduction.    Any financial institution, depository, material man, supply house, Obligee, general PRINCIPAL, subcontractor, or other person, firm, or corporation, when requested by the SURETY, is hereby authorized by PRINCIPAL and INDEMNITORS to furnish the SURETY any information requested by SURETY, including, but not limited to, the status of the work under any CONTRACT being performed by the PRINCIPAL, the status, extent or condition of the performance of any CONTRACT being performed by the PRINCIPAL, the status, extent or condition of the performance of any other CONTRACT and payment of accounts. Upon the occurrence of any Event of Default, PRINCIPAL and INDEMNITORS, upon SURETY'S request, shall immediately turn over to SURETY, or its designee, at a place and in a manner designated by

> SURETY, such books, records, accounts, documents and CONTRACTS in whatever form, as requested by SURETY. The expense of any inspection permitted hereunder, and of providing the records so specified, shall be borne by PRINCIPAL and INDEMNITORS. SURETY may furnish any information, which it now has or may hereafter acquire concerning the PRINCIPAL and INDEMNITORS, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms, or entities as it may deem appropriate.

24.    At the start of the Contract, Encon employed a subcontractor named TL Enterprises, Inc. to perform a portion of the remediation work.  Encon experienced significant difficulties, delays and deficiencies with TL Enterprises, Inc.'s work, and eventually determined that TL Enterprises, Inc.'s non-performance so endangered the timely and proper performance of the prime contract that Encon had to reasonable alternative but to terminate TL Enterprises, Inc's subcontract for default.

25.    By letter dated July 17, 2009, Encon gave TL a cure notice giving TL the fifteen days required by its subcontract to cure TL's performance deficiencies.  At the time Encon sent the cure notice, TL had already been paid $1.1 million of a total subcontract price of approximately $1.2 million.  Encon properly notified Defendants through their agent, Karen Barbour of Encon's intent to terminate TL Enterprises, Inc.'s subcontract well before the termination was effected.   Ms. Barbour immediately requested that Encon advise the Defendants, through her, of the estimated cost to complete TL's terminated work.  By email dated July 14, 2009, Encon estimated that completing TL's subcontract work would cost Encon approximately $409,000.00.  This

meant that TL had been overpaid (due to TL's misrepresentation of its actual project completion), approximately $300,000.00.

26.     On July 22, 2009, prior to the expiration of the default cure period TL sent Defendants a notice of intent to file claim for $451,299.13 plus an additional $286,570.80.  By letter dated July 28, 2009, defendant Quantum Partners, Inc. advised Encon of TL's notice of intent to file a claim.  This letter stated:

> We wish to thank you for the professional manner in which you have been conducting your business and the prompt attention you have paid to both the interest of your company, ECNON [ENCON] International, Inc., and ours, as the surety, in regards to the TL   Enterprises, Inc. situation.   We understand, per Karen Barbour, that TL Enterprises, Inc. sent notice on July 22, 2009 of their intent to file a claim in the amount of $451,299.13 plus additional damages $286,570.80 on our payment bond no.  1008E667IP27-01 issued on October 27, 2008 covering your EPA contract no. EP-R7-08-147.   And per our conversations with Karen, we further understand that you have agreed to place a sum in excess of $400,000.00 into a joint escrow account between ENCON International, Inc. and Quantum Partners, Inc. to cover all claims against our payment bond.  We ask that these funds be placed in Wachovia Bank (aka Wells Fargo) in Palm Beach Country Florida.

27.     Notably, the letter, signed by Mr. Alex Xavier and on Quantum Partners, Inc. referred to Quantum as the surety, and demanded that the reserve be placed in a joint account between Encon and Quantum, not Ms. Garrahan.

28.     Because Encon knew that the actual amounts that TL could make any reasonable claim to was far less than $400,000.00, Encon attempted to engage Quantum and Ms. Garrahan in a discussion of the matter to negotiate a more reasonable reserve amount.

29.    The Defendants, however, refused, and on August 12, 2009, Quantum Partners, Inc. sent Encon another demand letter demanding the placing of a $400,000.00 reserve deposit. This time, the account was not to be a joint account between Encon and Quantum, but rather an account solely in the name of defendant 1st Capital Lending Fund, Inc. Encon attempted to communicate with Defendants to discuss the matter, but were unilaterally told that the deposit had to be made or Defendants would increase their demand to $700,000.00 and institute funds control on the project immediately. Faced with this unwillingness to reasonably meet and discuss the situation, Encon had no option but to place the $400,000.00 reserve as requested.

30.    Encon sent a demand for arbitration of TL's claims to TL pursuant to the arbitration provisions of TL's subcontract. TL ignored this demand, requiring Encon, on July 28, 2010, to file Case No. EP-09-CV-0279 in this District to compel TL to honor the arbitration clause of its subcontract.

31.    Shortly thereafter, on September 21, 2009, TL responded to the arbitration demand and submitted an arbitration claim to the American Arbitration Association in the amount of $286,000, which represented $114,000 less than the reserve amount which Defendants had required Encon to place. Encon requested release of the excess reserve amount, but got no response from Defendants.

32.    TL then further filed a lawsuit (Civil Action No. 09-4131-JAR) under the Miller Act in the United States District Court for the District of Kansas against Encon. Initially, TL sued Encon and Ms. Karen Barbour, defendant's agent, mistakenly thinking she was the individual surety.    After filing of a motion to dismiss, TL amended its

11

pleadings to properly plead defendant Linda Garrahan as the Miller Act surety. Encon subsequently moved to suspend proceedings pending the outcome of the arbitration proceedings already pending before the American Arbitration Association. That motion was granted on March 3, 2010 and all proceedings were suspended. An arbitration hearing was currently set for October 12-13, 2010.

33.    By letter dated, November 21, 2009, defendant 1st Capital Lending Fund, Inc. asserted on behalf of all Defendants that Encon was in default of the GAI for allegedly failing to provide updated financial information including the percentage of completion on the contract. Defendants threatened again to implement funds control on the project. Defendants withdrew the default assertion by letter dated November 23, 2009 on 1st Capital Lending Fund, Inc.'s letterhead.

34.    On January 6, 2010, Defendants again asserted that Encon was in default of the GAI for alleged failure to provide updated financial information. This time the notice was on defendant Quantum Partners, Inc.'s letterhead. Defendants demanded an additional reserve of $50,000.00 be placed in an account again in the name of defendant 1st Capital Lending Fund, Inc. to cover the cost of an audit of Encon's accounting records. Encon complied with this demand. By letter dated February 4, 2010 on defendant Quantum Partners, Inc.'s letterhead, Defendants provided a list of particular financial records it demanded be provided at the audit to be conducted at Encon's premises.

35.     The audit was conducted as requested in February 2010.   To date, Defendants have not identified any specific deficiency or problem with Encon's books of account as a result of that audit.

36.     By letter dated February 18, 2010 again on Quantum Partners, Inc. letterhead signed by defendant Brian Garrahan, Defendants demanded a yet further increase in the reserve in the amount of $156,880.00.  Added to previous reserves, this would bring the total reserve amount up to $475,000.00.  At the same time, by a separate letter on Quantum Partners, Inc. letterhead signed by defendant Brian Garrahan, Defendants demanded that counsel tendered by Encon at Encon's expense to defend them in the Miller Act action withdraw representation of Defendants, even though all proceedings in the Miller Act action had been suspended pending the outcome of arbitration.

37.     Counsel for Encon responded to defendant Brian Garrahan by letter dated February 19, 2010 explaining the litigation position of the Miller Act action and accompanying arbitration, advising Defendants that the additional reserve demand had been complied with, and demanding an accounting of attorneys fees spent out of previous reserve placements and requesting a face to face meeting to resolve outstanding issues.

38.     On or about March 25, 2010, counsel for Encon was contacted by an attorney named Dennis C. Ehlers, Esq.  who represented he had been retained by Defendants.   Counsel for Encon followed up that discussion with a detailed letter explaining the entire history of the dispute between Encon and TL and Encon's counter claim against TL for work it had misrepresented it had performed in the amount of

13

$377,000.00. Counsel for Encon advised Mr. Ehlers that Encon had placed $400,000 in reserve for TL's claim, and a further $75,000 for Defendants attorney's fees, but had yet to receive an accounting of what had been done with those amounts. Counsel for Encon closed by again requesting a face to face meeting to resolve the issues between Encon and Defendants.

39.     Counsel for Defendants did not respond for more than a month, until April 29, 2010. Counsel for Defendants withdrew the demand that Encon withdraw the tender of defense. The letter went on to make generic criticisms of Encon's accounting systems, but failed to present any specific instance of error in Encon's accounting. The letter accused Encon of "comingling" funds, but failed to explain what it meant by that charge. The letter closed by demanding a "10% holdback" on all payments under Encon's EPA contract.

40.     Encon attempted to engage Defendants and/or their counsel in a conversation about defendant's "10% holdback" demand, but could not get a response. By letter dated June 2, 2010 on Quantum Partners, Inc.'s letterhead and signed by defendant Brian Garrahan, Defendants again asserted that Encon was in default of the GIA, and threatened to take unspecified action against Encon.

41.     Counsel for Encon responded to Counsel for Defendants the same day, stating:

> My client received the attached "default letter" yesterday and provided me a copy. This is another in a series of demands by your client. In response to each demand, I have attempted to engage you and your client in a dialogue regarding very real concerns my client has about the demands being made.

14

While both I and my client appreciate the fact that the demands have become less onerous, the lack of any response to my reasonable questions and the continuing unduly aggressive nature of your client's letters are a problem. Since I and my client cannot get any answers to any of the questions previously posed, it should be little surprise that my client did not simply sign and return the letter unilaterally presented by your client late last Friday.

Encon is not rejecting the idea of giving your client full visibility to the account. However, your client needs to be clear about what it intends to do with that access. Your client has made repeated vague allegations about "commingling of funds". I have now twice in writing asked you and your client to be specific about what your client considers "commingling of funds", and give specific examples. We have received only silence in return.

If setting up a separate bank account for this project is what your client wants, that may be accommodated, but there are details that have to be discussed and agreed. The biggest principle that must be agreed upon is that, if there is to be a separate account, when a payment is received from the Government, once all payroll, subcontractor and vendor obligations have been satisfied for the month for which payment is made, Encon has the right to transfer the remaining gross profit to its primary operating account. That is not "commingling of funds"; that is normal operation of a business for profit. Nothing in the GAI or any other document requires Encon to perform the contract at a loss or for free, and no Court in this country will interpret the GAI in that manner. Your client already has a massive reserve, for which you and your client have refused to provide any accounting. Your client has no further right under the GAI to require Encon to leave all gross profit in a separate account.

Again, Encon is not opposed to a separate bank account to receive contract payments, make payroll and pay all vendors. Encon is not opposed to making your client a beneficiary of that account and providing your client with monthly statements and evidence of payment of project expenses. There must, however, be an explicit agreement that, once all

15

project expenses such as payroll-related and vendor expenses are paid for a given month, the gross profit for that month may be transferred by Encon to its general operating account.

Please contact me at your earliest convenience to discuss this situation. Thank you.

42.   No response to this letter was ever received.

43.   By letter dated August 16, 2010 on defendant Quantum letterhead signed by Defendant Brian Garrahan, Defendants purported to give Encon a "Notice of Termination". This letter referred to a previous letter entitled "Certified Letter of Default" dated July 14, 2010 which Defendants alleged had been provided to Encon, but which Encon had not received. The August 16, 2010 letter stated that Defendants intended to "take over this project immediately". Counsel for Encon attempted to contact counsel for Defendants, but was informed that they no longer represented Defendants.

44.   Encon subsequently discovered that the July 14, 2010 letter referenced in Defendants August 16, 2010 letter had been sent to a former personal residence of the principals of Encon rather than to Encon's business address. The July 14, 2010 letter also on defendant Quantum's letterhead and signed by defendant Brian Garrahan, reiterated the vague claims of a "lack of financial controls" again with no specifics, and stated that Defendants were "plac[ing] your company and its guarantors (Mr. Alex Woelper and Mr. [sic] Shu Fei Woelper), in technical default" of the GAI.

45.   On or about August 20, 2010, Defendant Linda Garrahan sent a letter to Anthony LaMaster, the EPA Contracting Officer in charge of Encon's EPA Contract informing him that her "firm" had "terminated" Encon and was taking over actual

performance of the Contract. Encon was not at that time (or at any other relevant time) in default in its performance on the contract at EPA, and in fact is ahead of schedule on the current remediation quantities.

46.     Defendants cannot legally "terminate" Encon's prime contract with the United States of America. Only the United States of America can decide what entity will and will not perform its contracts. Defendant's illegal attempt to do so immediately damaged Encon's otherwise very good relationship with the Government on the Contract by bringing into question Encon's ability to perform and the reliability of Encon's surety.

47.     Encon is not in default of either the prime contract with the EPA or the GIA. Encon has made every attempt to work with Defendants and meet to discuss their concerns in detail so that they could be addressed. In response, Encon has received nothing but ever more arbitrary and draconian demands for reserve placements. Defendant's illegal attempt to "terminate" and interfere with Encon's contract with the US EPA leaves Encon with no alternative but to seek relief before this Court.

48.     On or about January 27, 2011, Encon sent defendant, Linda Garrahan a letter wherein Ms. Garrahan was informed that plaintiff had settled any and all claims that its subcontractor, TL, may have had arising out of Encon's government contract with the EPA. In this same letter, Encon asked Ms. Garrahan to release those security funds previously tendered by Encon to cover any possible loss associated with this particular subcontractor and its subcontracting agreement. Defendant, Linda Garrahan failed to respond to this letter.

49.     On numerous occasions, Encon has requested a formal accounting of all

funds tendered by plaintiff to Defendants, which Defendants represented would be held

in separate escrow accounts.  However, to-date, Defendants have steadfastly refused to

return those funds to which Encon is entitled; provide Encon with a formal accounting of

such funds; or, give Encon any assurances whatsoever that such funds are still in

defendant's possession and have not been wrongfully spent and/or otherwise diverted.

50.     A search of the Texas Department on Insurance web site indicates that none

of the Defendants herein are licensed to sell insurance within the State of Texas.[2]

51.     A search of the Florida Department of Insurance web site indicates that

none of the Defendants herein are licensed to sell insurance within the State of Florida.[3]

### Defendants Have Acted as a Joint Enterprise

52.     Although defendant Linda Garrahan signed the affidavit of individual

surety, all of the named Defendants have acted in concert throughout the events described

above.  All communications have been from defendant Quantum or defendant 1st Capital

all of which spoke of "we" and "us" in referring to all of the named individuals and

entities as the surety to whom Defendants allege Encon owes duties.

### COUNTS

### Count 1
### Declaratory Relief

53.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set

forth in full.  Pursuant to 28 USC §2201, Encon is entitled to Declaratory Relief that it is

---

[2] https://www.texasonline.state.tx.us/NASApp/tdi/TdiARManager
[3] http://www.myfloridacfo.com/Data/AAR_ALIS1/index.htm

not in default of the GAI  Encon has provided all accounting information to which Defendants are entitled.  Encon has placed a greater monetary reserve than that to which Defendants were entitled to demand.  Encon is not in default of its performance obligations under the prime contract.  Aside from the TL claim for which Encon has provided a more than adequate reserve, there have been no other claims made upon the payment bond.  Finally, Encon is entitled to an accounting of the status and use, if any of the reserve amounts previously placed by Encon.

**Count 2**
**Breach of Contract**

54.  Encon hereby incorporates the contents of paragraphs 1 through 52 as if set forth in full.  Defendants' actions in attempting to seize control of performance of the prime contract and in demanding reserve amounts in excess of those to which they were reasonably entitled constitutes a breach of the GAI between Encon and Defendants. Encon has been damaged as a result of this breach.

**Attorney Fees**

55.  Due to defendant's breach of its written contract with Encon, Encon has been required to retain the services of an attorney in order to protect its interests. Pursuant to §38.001 of the Texas Civil Practice and Remedies Code, Encon has satisfied all conditions precedent to recovery of its reasonable and necessary attorneys' fees incurred in this action and pleads for recovery thereof.

## Count 3
## Tortuous Interference with Current and Future Contractual Relationships

56.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set

forth in full.  Defendant's actions in illegally attempting to seize control of performance

of Encon's prime contract with the EPA constitutes a tortuous interference with Encon's

current and future contractual relationships with the United States of America.  Encon is

entitled to judgment making it whole for that harm.

## Count 4
## Deceptive Trade Practices – Consumer Protection At §17.50(a)

57.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set

forth in full.

58.     Encon has a cause of action against Defendants under the provisions of the

Deceptive Trade Practices-Consumer Protection Act pursuant to §17.50(a) which

provides as follows:

> "A consumer may maintain an action where any of the following constitute
> a producing cause of actual damages:

1.     The use or employment by any person of a false, misleading or deceptive
       act or practice that is specifically enumerated in a subdivision of Subsection
       (b) of Subsection 17.46 of this Subchapter;

2.     The breach of an express or implied warranty; or,

3.     Any unconscionable action or course of action by any person by
       unreasonable delay in payment, unreasonable denial of coverage,
       misrepresentation of facts."

59.     Encon also hereby invokes the provisions of the Texas Business and Commerce Code §17.41 *et seq.*, commonly referred to as the Deceptive Trade Practices-Consumer Protection Act.

60.     Encon is entitled to the relief set out in the Act.

## Count 5
### Deceptive Trade Practices – Consumer Protection Act §17.46(b)

61.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set forth in full.

62.     Defendant's have violated various provisions of the Texas Business and Commerce Code §17.46(b) including, but not limited to the following:

(a)     causing confusion or misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(b)     causing confusion or misunderstanding as to affiliation, connection, or association with, or certification by, another;

(c)     representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

(d)     representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(e)     representing that an agreement confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law;

(f)     representing that work or services have been performed on or parts replaced in goods when the work or services were not performed or the parts replaced;

21

(g)     the failure to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the customer into a transaction in which the customer would not have entered had the information was disclosed.

56.     Encon is entitled to the relief set out in the Act.

**Count 6**
**Deceptive Trade Practices – Consumer Protection Act §17.50(a)(3)**

63.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set forth in full.

64.     Defendants, by virtue of their conduct as described above, engaged in an unconscionable action or course of action as that term is defined by the Deceptive Trade Practices – Consumer Protection Act.

65.     Encon is entitled to the relief set out in the Act.

**Count 7**
**Common Law Fraud – Fraudulent Misrepresentation**

66.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set forth in full.

67.     Defendants made representations to Encon regarding the characteristics of the services provided by Defendants and plaintiffs obligations. These representations were material representations.  The representations were false.  When Defendants, made these representations they either knew they were false or they made such representations recklessly, as a positive assertion, and without knowledge of their truth.  Defendants made these representations with the intent that Encon act upon them.  Encon reasonably

22

relied upon the representations of Defendants and the representations caused injury to Encon.

### Count 8
### Common Law Fraud – Fraudulent Inducement

68.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set forth in full.

69.     Defendants made representations to Encon regarding Encon's obligation to tender funds pursuant to their GAI agreement.  Defendants also made representations regarding their ownership and/or the value of defendant's collateral tendered as security. Further, defendant's misrepresented their knowledge, experience and ability to act as a proper Surety for Encon's government contract.  The representations were false.  When Defendants made these representations they either knew they were false or they made such representations recklessly, as a positive assertion, and without knowledge of their truth.  Defendants made these representations with the intent that Encon act upon them. Encon relied upon defendant's representations and the representations caused injury to Encon.

### Count 9
### Conspiracy to Commit Common Law Fraud

70.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set forth in full.

71.     Defendants all worked together in an elaborate scheme with an unlawful purpose and/or in a scheme with a lawful purpose by unlawful means.  All of these Defendants had a meeting of the minds on the object or course of action.  Specifically, the Defendants were involved in a scheme to get Encon to tender large sums of money into defendant's bank account for purposes of improperly diverting these funds into their own pockets and/or the pockets of their in-house counsel.  Further, Defendants were involved in an elaborate scheme to deny Encon the proper return of such funds by suggesting that Encon's business practices were somehow not proper and thus required Encon to tender even more funds into defendant's possession. One or more of the Defendants committed an unlawful, overt act to further the objective or course of action; and, PLAINTIFFS suffered injury as a proximate result of the wrongful act.

**Count 10**
**Conversion**

72.     Encon hereby incorporates the contents of paragraphs 1 through 52 as if set forth in full.

73.     As set forth herein, Defendants have steadfastly refused to return those funds of Encon which Encon deposited into various accounts for security against the claim by one of its subcontractors.  Further, Defendants have steadfastly refused to return the whole, and/or the reasonable balance, of those funds which Defendants demanded, and Encon tendered, as security for attorney's fees and audit fees.

74.     These funds were delivered for safekeeping; the funds were intended to be kept segregated; the funds were to be maintained intact in a single joint account or in

specific separate escrow accounts; and, Defendant's do not maintain a valid claim to the title of such funds.

75.    Defendants have wrongfully exercised dominion or control over these funds of Encon; and, as a direct result of this wrongful exercise of dominion or control over Encon's funds, Encon has suffered, and is continuing to suffer, damages.

## Prayer

WHEREFORE, premises considered, Encon respectfully prays that upon final hearing of this matter it be granted judgment as follows:

1) Declaratory judgment that:

    a. Encon is not in default of its obligations under the General Indemnity Agreement; and

    b. Encon is entitled to an accounting of Defendants use of all funds placed in reserve by Encon; and

    c. Defendants are not entitled to "take over" performance of Encon's prime contract with the US EPA; and

2) Judgment for actual damages suffered as a result of Defendants' breach of the General Indemnity Agreement; and

3) Reasonable and necessary attorneys fees; and

4) Judgment for actual and nominal damages suffered as a result of Defendants' intentional interference with Encon's current and future contractual relationships with the United States of America;

5) Judgment on Encon's pleadings of deceptive trade practices, fraud, conspiracy to commit fraud and conversion; and,

6) Such other and further relief to which Encon may show itself to be justly entitled.

DATED: February 28, 2010

Respectfully Submitted,

By:  ____/s/ John C. Dulske_____
JOHN C. DULSKE
jdulske@dulske-gluys.com
State Bar No. 00783994
THE LAW OFFICES OF DULSKE & GLUYS, P.C.
10500 Heritage Blvd., Suite 107
San Antonio, Texas 78216
(210) 524-3821 (Telephone)
(210) 340-2648 (Facsimile)

ATTORNEY FOR PLAINTIFF,
ENCON INTERNATIONAL, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the above and foregoing document has been sent by Facsimile to all counsel of record listed below on this the 28th day of February, 2011.

Jack Daniel Harkins
Cox Smith Matthews Incorporated
112 East Pecan Street
Suite 1800
San Antonio, Texas 78205
(210) 554-5500 (Telephone)
(210) 226-8395 (Facsimile)
dharkins@coxsmith.com

By: _____ /s/ John C. Dulske _____

JOHN C. DULSKE