**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

ENCON INTERNATIONAL, INC.,    )
                                       )
                 Plaintiff,    )
                                       )
         v.                  )         Case No. 11-2137-KGS
                                       )
LINDA GARRAHAN,              )
BRIAN GARRAHAN,            )
QUANTUM PARTNERS, INC.,    )
FIRST CAPITAL LENDING FUND, INC., )
and JOSEPH GARRAHAN,       )
                                     )
            Defendants.    )

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court upon the parties' cross-motions for summary

judgment. Plaintiff Encon International, Inc. has moved for summary judgment in its favor on all

of the claims it asserts against Defendants Linda Garrahan, Brian Garrahan, Joseph Garrahan,

Quantum Partners, Inc., and First Capital Lending Fund, Inc. (collectively "the Quantum

defendants") as well as its joint enterprise theory of liability (ECF No. 289). The Quantum

defendants move for summary judgment in their favor on claims asserted against them by Encon

(ECF No. 290).

The claims in this case stem from actions taken by entities involved with posting payment

and performance bonds for Encon as required by Encon's contract with the Environmental

Protection Agency (EPA). Encon contends it paid bond premiums but later discovered that the

collateral pledged as security by Ms. Garrahan, the surety, was not owned by her in fee simple as

she had represented. During Encon's performance of the EPA contract, a subcontractor also gave

notice of its intent to make a claim on the payment bond and subsequently filed suit to recover

payment. As a result, the Quantum defendants demanded certain funds be deposited into a

reserve account pursuant to a separate written agreement between Encon and Ms. Garrahan whereby Encon agreed, among other things, to indemnify her in the event of a claim on the bonds. To date, the Quantum defendants have not returned the reserve funds to Encon. Encon asserts the Quantum defendants committed fraud, converted Encon's property, engaged in a civil conspiracy, and breached their contract with Encon. Encon also asks the court to declare that the indemnity agreement between Encon and Ms. Garrahan is not a valid and binding contract because it is not supported by consideration. For the reasons stated below, both motions are granted in part and denied in part.

## I.      Legal Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."[1] A fact is "material" if it is "essential to the proper disposition of the claim."[2] An issue of fact is "genuine" "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[3] The court views the evidence and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party.[4]

The legal standard for summary judgment does not change if the parties file cross-motions for summary judgment. "Cross-motions for summary judgment are to be treated separately; the denial of one does not require the grant of another."[5] "To the extent the cross-

---

[1] Fed. R. Civ. P. 56(a).

[2] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

[3] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248).

[4] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

[5] *Buell Cabinet Co. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2720, at 464 (1973).

motions overlap, however, the court addresses the legal arguments together."[6] Each party moving for summary judgment bears the initial burden of establishing the lack of a genuine issue of material fact and the entitlement to a judgment as a matter of law.[7] To meet this standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the claims of the opposing party; instead, the moving party can simply point out the absence of evidence for the other party on an essential element of that party's claim.[8]

If the movant carries this initial burden, the burden shifts to the nonmovant to "set forth specific facts showing that there is a genuine issue for trial."[9] The nonmovant may not rest on mere allegations or denials of its pleading.[10] Rather, the nonmovant must give "specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[11] "Conclusory and self-serving affidavits are not sufficient" to show disputed material facts.[12] In addition, the nonmovant cannot rely "on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment in the mere hope that something will turn up at trial."[13]

---

[6] *Tri–State Truck Ins., Ltd. v. First Nat'l Bank of Wamego*, No. 09–4158–SAC, 2011 WL 3349153, at *1 (D. Kan. Aug. 3, 2011).

[7] *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

[8] *See Celotex*, 477 U.S. at 323; *Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

[9] *Anderson*, 477 U.S. at 256; *see also Adler*, 144 F.3d at 671 n.1 (discussing burden shifting for a motion for summary judgment).

[10] *Anderson*, 477 U.S. at 256.

[11] *Adler*, 144 F.3d at 671.

[12] *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

[13] *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citing *Bryant v. O'Connor*, 848 F.2d 1064, 1067 (10th Cir. 1988)).

## II.  Evidentiary Issues

All parties have raised issues with some of the evidence relied upon by the opposing side in setting forth that side's statement of facts. Because these rulings impact which facts the court considers uncontroverted or viewed in a light most favorable to the nonmoving party, the court addresses these issues first.

### A.  Requests for Admissions

During discovery, Encon served requests for admissions on Quantum Partners, First Capital Lending Fund, and Linda Garrahan. Ms. Garrahan and her business entities failed to respond to the requests for admissions, which resulted in the matters being deemed admitted.[14] The court subsequently denied these defendants' motion to withdraw the deemed admissions.[15] Despite this, the Quantum defendants still urge the court not to consider the admissions because it is a possibility that the defendants' former counsel of record never informed them of the requests for admissions.

Raising a theoretical possibility that former defense counsel failed to fulfill their obligations is not sufficient to have the deemed admissions withdrawn. Indeed, notably absent from the record is an affidavit from Ms. Garrahan that states whether her former counsel had failed to communicate with her about the requests for admissions. Moreover, the court previously rejected the same argument when it denied the motion to withdraw the deemed admissions. The court found that given these parties' repeated failure to participate in discovery, appear for hearings and conferences with the court, or abide by case management deadlines, it was not credible "that their failure to make any attempt to respond to the request for admissions

---

[14] *See* Fed. R. Civ. P. 36(a)(3) (stating that failure to timely respond to a request for admission results in the matter being deemed admitted).

[15] *See* Order, ECF No. 282.

until approximately eight months after being served with the request is solely the fault of one of their former attorneys."[16] So, the court will set forth facts supported by the deemed admissions as to Ms. Garrahan and her business entities.

Encon, however, also relies upon these deemed admissions as they relate to Brian and Joseph Garrahan. They are not to be considered for this purpose.[17] The failure to respond to the requests for admissions resulted in a type of sanction—the matters were deemed admitted as to the claims against Ms. Garrahan and her business entities. But this sanction should have no bearing on the claims against the other defendants. Therefore, the court will not will rely on the deemed admissions as to Brian and Joseph Garrahan when setting forth the facts.

### B. Failure to Cite to Evidence

Encon argues the Quantum defendants have improperly attempted to controvert certain facts. The Quantum defendants indicate that some facts set forth by Encon are controverted for the sole reason that these facts are immaterial or state a legal conclusion. Fed. R. Civ. P. 56(c)(1) requires a party asserting that a fact is genuinely disputed to support the assertion by citing to evidence or showing that the materials cited in support of a fact "do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."[18] Where the Quantum defendants have failed to properly controvert Encon's statement of facts, those facts will be deemed admitted, provided that they find support in the

---

[16] *Id.* at 4.

[17] *See Becerra v. Asher*, 105 F.3d 1042, 1048 (5th Cir. 1997) ("Deemed admissions by a party opponent cannot be used against a co-party."); *Riberglass, Inc. v. Techni-Glass Indus., Inc.*, 811 F.2d 565, 566 (11th Cir. 1987) (stating that the deemed admissions of co-defendants cannot bind the other defendant where he actually responded to the requests for admissions that were directed at him).

[18] Fed. R. Civ. P. 56(c)(1)(B).

record.[19] The Quantum defendants also argue that certain facts are "controverted" because the evidence upon which Encon relies is not sufficient to establish that fact. The court has evaluated those instances and will only deem Encon's facts admitted to the extent the record supports them.

### C. Hearsay

"Hearsay is an out-of-court statement offered in evidence to prove the truth of the matter asserted."[20] The Quantum defendants object to Encon's Statement of Facts Nos. 3, 28, 29, and 43 because they are supported by evidence that is inadmissible as hearsay. In support of Statement of Fact No. 3, Encon relies on the deposition testimony of Karen Barbour of The Barbour Group, a co-defendant. The Barbour Group brokered the bonds involved in this case. Statement of Fact No. 3 involves Ms. Barbour's recollection of certain statements made to her by Joseph Garrahan, and fits within the definition of hearsay. Statement of Fact No. 29 is supported by correspondence from Ms. Barbour to Alex Woelper of Encon and Joseph Garrahan and also contains statements that qualify as hearsay. As to Statement of Fact Nos. 28 and 43, Encon relies on documents containing statements also fitting within the definition of hearsay. However, in support of Statement of Fact Nos. 28 and 43, Encon also relies on the deposition testimony of Mr. Woelper, to which the Quantum defendants lodge no specific objection.

Encon contends the evidence is admissible as an exception to the general hearsay rule under Fed. R. Evid. 801(d)(2), which provides that statements are not hearsay when they are offered against an opposing party *and*:

> **(A)** was made by the party in an individual or representative capacity;

---

[19] D. Kan. Rule 56(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").

[20] *United States v. Ledford*, 443 F.3d 702, 707 (10th Cir. 2005) (internal quotations omitted).

**(B)** is one the party manifested that it adopted or believed to be true;

**(C)** was made by a person whom the party authorized to make a statement on the subject;

**(D)** was made by the party's agent or employee on a matter within the scope of that relationship and while it existed; or

**(E)** was made by the party's coconspirator during and in furtherance of the conspiracy.

Encon merely states the evidence is admissible because it is being offered against an opposing party, but it fails to cite or explain which of the additional above categories it believes apply to the contested evidence. It is not readily apparent to the court which, if any, of these categories apply. In the absence of a more detailed argument from Encon, the court sustains the hearsay objections. It will not consider Encon's Statement of Fact Nos. 3 and 29. As to Statement of Fact Nos. 28 and 43, which are also supported by Mr. Woelper's deposition testimony, the court will not consider the documents to which the Quantum defendants have lodged a hearsay objection, but the court will consider these facts only to the extent Mr. Woelper's deposition testimony supports these assertions.

### III.    Facts

The following facts are either stipulations contained in the Pretrial Order, matters deemed admitted, or are uncontroverted.

#### A.  The EPA Contract, Payment and Performance Bonds, and The General Agreement of Indemnity

In late September of 2008, the EPA awarded Encon, a Texas corporation, a contract to remediate certain lots of contaminated soil in Cherokee County, Kansas. The contract paid $4,766,732.65 for the base year and provided for three option years thereafter. The Miller Act, 40 U.S.C. §3131, *et seq.*, requires prime contractors on certain high-dollar federal government

construction contracts to post a performance bond, guaranteeing the performance of their contractual duties, and a payment bond, guaranteeing payment to their subcontractors and material suppliers. The EPA contract required both types of bonds for the Cherokee County project. To help it secure the bonds, Encon, a Texas corporation, contacted Karen Barbour of The Barbour Group (TBG), a Maryland limited-liability corporation. Encon was inexperienced with bonding and relied on Karen Barbour to produce bonds that met the requirements of the EPA contract. On September 27, 2008, the EPA awarded the contract to Encon.

TBG contacted 1st Capital Lending Fund, a Florida corporation, and eventually it was determined that Linda Garrahan would serve as the individual surety on the bonds. Ms. Garrahan and Brian Garrahan own Quantum Partners and 1st Capital Lending Fund, all of which were involved with issues related to administration of the bonds and collection of the bond premiums. Although not an owner, Ms. Garrahan's husband, Joseph Garrahan, also performed work for the companies.

The parties began executing the relevant documents in October of 2008. As part of the parties' dealings, Encon signed a General Agreement of Indemnity (GAI) on October 24, 2008. The GAI is the only written contract between Encon and any of the Quantum defendants. Under the GAI, Encon is the principal; Alex Woelper and Shu Fei Woelper are the indemnitors, and Linda Garrahan is the individual surety. Among other things, the GAI provides,

> If for any reason Surety shall deem it necessary to establish or increase a reserve to cover any possible liability or loss for which the Principal or Indemnitors will be obligated to indemnify the Surety under the terms of this Agreement, . . . the Principal or Indemnitors will deposit with the Surety, immediately upon demand, a sum of money equal to such reserve, and any increase thereof, as collateral security to Surety for such liability or loss.[21]

---

[21] *See* General Agreement of Indemnity, ECF No. 291-4.

Also on October 24, 2008, TBG issued an invoice to Encon for the bond premium for the payment and performance bonds that would be issued by Linda Garrahan on October 27, 2008. Because only fifty percent of the project needed to be bonded, TBG invoiced $190,655 (which is equivalent to eight percent of the bond amount or four percent of the total contract amount). On October 24, 2008, Encon wired $190,655 to TBG, and October 27, 2008, TBG wired $142,991.28 to 1st Capital Lending Fund. TBG retained one percent of the contract amount as its commission. Ms. Garrahan then executed payment and performance bonds dated October 27, 2008. The bonds list the surety as "Linda Garrahan, Individual Surety c/o 1st Capital Lending Trust."[22] On October 27, 2008, Ms. Garrahan executed an Affidavit of Individual Surety that identifies her as the individual surety, her place of employment as REOMT, LLC c/o 1st Capital Lending Trust, and TBG as the bond broker. The affidavit states, "This affidavit is made to induce the United States of America to accept [Linda Garrahan] as surety on the attached bond."[23] The affidavit pledges,

> A lien in favor of the US EPA, in the amount of $2,383,186.00 against Real Property, located at the Southeast Quarter (1/4) Section 9 of Township 12 South, Range 71 East, Lincoln County, state of Nevada, USA, as evidenced by the attached supporting documents.[24]

The form affidavit also instructs the individual surety to "attach supporting certified documents including recorded lien, evidence of title and the current tax assessment of the property."[25] Ms. Garrahan's submission to the EPA contained a letter stating that there were

---

[22] *See* Payment Bond, ECF No. 307-1; Performance Bond, ECF No. 307-2.

[23] *See* Aff. of Individual Surety, at 1 ECF No. 289-10.

[24] *Id.*

[25] *Id.*

unavoidable delays in the filing process, but that she expected to have a stamped copy of the lien within seven to ten days. The correspondence also states, "We further expect that in an additional 10-15 days we will also have the original lien along with an Ownership and Encumbrance Report, as proof of title, certified to the United States Government showing that the lien has been attached to the property."[26] Clive R. Wellman performed an appraisal of the property Ms. Garrahan pledged to secure the bonds.

### B. Option Years Under the EPA Contract

On or about May 21, 2009, the EPA awarded Encon the option years under the contract, and on November 30, 2009, Ms. Garrahan executed payment and performance bonds in favor of Encon for the option years of the contract. On June 2, 2009, TBG issued an invoice to Encon for the bond premium as a result of an increase in the contract amount for the base year. Because the contract amount increased by $47,000, TBG invoiced four percent of the increase, which is equivalent to $1,870. On June 3, 2009, TBG wired $1,401.28 to 1st Capital Lending Fund. TBG retained $467.70 as its commission. On June 2, 2009, TBG issued a separate invoice to Encon in the amount of $800 in connection with the real estate lien recording fee. On or about July 2, 2009, Encon issued a check to TBG in the amount of $800. And on July 28, 2009, TBG sent the $800 payment to 1st Capital Lending Fund.

On October 26, 2009, TBG issued an invoice to Encon for the bond premium for the option years under the contract. The total bond premium of $427,520 was equivalent to four percent of the contract price of $10,688,000. The invoice was reduced by $106,880, or one percent of the contract price, which was to be paid by funds that 1st Capital Lending Fund was holding. The invoice amount was $320,640. On November 24, 2009, Encon paid that amount to

---

[26] Letter from Linda to the U.S. EPA, Region 7, at 1, ECF No. 289-11.

TBG. The next day, TBG wired $213,760 to 1st Capital Lending Fund. TBG retained $106,880 as commission.

Between October 2008 and November 2009, TBG received at least $513,965 from Encon as premiums for the October 2008 and November 2009 individual surety bonds. TBG distributed $358,953.56 to 1st Capital Lending Fund and retained $155,011.44 as commission.

### C. Subcontractor TL Enterprises' Claim Against the Payment Bond and the Quantum Defendants' Claim that Encon was in Default under the GAI

As work on the Cherokee County project progressed, Encon and a subcontractor, TL Enterprises, Inc., encountered difficulties. On July 22, 2009, TL Enterprises sent Encon a Notice of Intent to File a Claim for $451,299.13 plus an additional $286,570.80. After Quantum Partners learned of TL Enterprises' intent to make a claim, Quantum Partners sent Encon a letter dated August 12, 2009, which demanded that pursuant to the GAI, Encon deposit $400,000 into a 1st Capital Lending Fund account.[27] Encon complied with the demand and sent $400,000, which was eventually placed into a reserve fund controlled by 1st Capital Lending Fund. On September 22, 2009, TL Enterprises filed a civil lawsuit in the District of Kansas.[28]

On January 6, 2010, Brian Garrahan sent Encon a letter under Quantum Partners' letterhead. It stated Mr. Garrahan was acting "[o]n behalf of the Individual Surety."[29] Among other things, the letter advised Encon that it was in default under the GAI for failing to provide updated financial information. The letter demanded that Encon "immediately wire a deposit of

---

[27] *See* Letter from Quantum Partners to Encon at 2, ECF No. 307-6.

[28] *See TL Enter., Inc. v. Encon Int'l, Inc.*, No. 09-4131-JAR.

[29] *See* Letter from Quantum Partners to Encon at 1-2, ECF No. 289-25.

$50,000, to cover auditing and legal fees, into the 1st Capital Lending Fund, Inc. account [listed below.]"[30] On January 11, 2010, Encon paid $50,000 to 1st Capital Lending Fund.

On February 17, 2010, TBG issued an invoice to Encon in the amount of $156,880. This amount consisted of $106,880 that was to replenish the $106,880 that had been paid in bond premiums from the reserve account and the $50,000 in purported attorneys' fees related to the TL Enterprises lawsuit.

In February 2011, TL Enterprises executed a final settlement agreement regarding its claim against the payment bond. Thereafter, on April 27, 2011, the parties filed a joint stipulation of dismissal with prejudice of the pending federal court suit.[31] Encon paid TL Enterprises $155,000 in full and final settlement.

As of October 11, 2011, the Cherokee County project had been completed except for planting some grass and tilling the soil. By March 2012, the EPA had paid Encon in full, minus a $50,000 retention held by the EPA while Encon completed grass planting and soil tilling.

### D. Matters Deemed Admitted

As a result of the deemed admissions, Ms. Garrahan, Quantum Partners and 1st Capital Lending Fund have admitted that: Ms. Garrahan has never owned in fee simple the real property known as the "Lucky Linda" that she pledged as collateral to secure the bonds; the Affidavit of Individual Surety submitted by Ms. Garrahan pertaining to the project and bonds at issue in this case contained material statements that Ms. Garrahan and her business entities knew to be false at the time of the affidavit's submission; the property securing the bonds has never been worth $47,000,000; Ms. Garrahan and her business entities knew from May 2008 to June 2008 that Mr.

---

[30] *Id.* at 1.

[31] *See TL Enter., Inc. v. Encon Int'l, Inc.*, No. 09-4131-JAR, Joint Stip. of Dismissal with Prejudice, ECF No. 47.

Wellman was not a licensed appraiser; that Ms. Garrahan and her business entities knew the bonds issued were invalid; Encon received nothing of value in exchange for executing the GAI; Encon's demands for a return of the money it placed into the reserve account were made in good faith; Ms. Garrahan and her business entities' failure to return the funds was improper, unreasonable, and in bad faith; the invoices Bates labeled D-4478-D4817 reflect work that did not need to be performed; the invoices Bates labeled D-4478-D817 reflect work for which Encon should not have been charged any fees in addition to the Individual Surety Bond premiums; the invoices Bates labeled D-4478-D4817 reflect rates and amounts that are unreasonably excessive; the defendants in this case acted as a joint enterprise; Ms. Garrahan and her business entities made statements to Encon they knew were untrue with an intent to deceive Encon; defendants had a meeting of the minds to sell bonds to Encon based on false representations to Encon and to collect and retain reserve funds from Encon based on false representations.

### E.  Mr. Woelper's *Qui Tam* Action

In addition to this action, Mr. Woelper filed suit against the Quantum defendants under 31 U.S.C. §§3729-3732 of the False Claims Act.  The *qui tam* action is currently pending in the Southern District of Florida.[32]  The *qui tam* complaint also pleads the same facts giving rise to this action. It alleges, "Defendants submitted false representations and statements to the United States government regarding specific real property used to secure the performance and payment bonds on Encon's EPA Contract, Defendants' ownership of the real property, and the value of the real property."[33]  The complaint further states, "The U.S. government reimbursed Encon for

---

[32] *See United States ex. rel. Alex Woelper v. Quantum Partners, et al.*, 12-22295-CMA.

[33] Compl. at ¶ 13, ECF No. 307-20.

all three bond premiums, totaling $619,455.00."[34] The Quantum defendants contend the *qui tam* suit illustrates that Encon was not damaged because the EPA reimbursed Encon for its bond premiums.

### IV.    Analysis[35]

The Quantum defendants' summary judgment motion largely focuses on the element of damages as to each claim, not whether the Quantum defendants' actions proximately caused Encon's damages. Highly summarized, the Quantum defendants argue that Encon suffered no damage because the EPA reimbursed Encon for its bond premiums, because the GAI allowed the Quantum defendants to demand funds be placed into a reserve account, and because Encon has not pointed to any evidence showing it was entitled to the return of the reserve funds. For the reasons explained below, the court largely rejects these arguments.

Encon has also moved for summary judgment on all of its claims against the Quantum defendants, which requires the court to analyze each element of Encon's claims and evidence in support. The record contains scant evidence supporting any of Encon's claims, and in the case of Brian and Joseph Garrahan, the record is void of evidence establishing any of the elements as to any of the claims Encon asserts against them. In some cases, the court has grave doubts that Encon has even stated a claim as to certain defendants. Yet, the court finds itself in a peculiar position because the Quantum defendants did not move for summary judgment on the ground that Encon lacks evidence supporting all of the elements of its claims or on the ground that Encon has not stated a valid claim for relief.

---

[34] *Id.* at ¶ 21.

[35] The parties have stipulated that Texas law governs Encon's claims. *See* Pretrial Order at 2-3, ECF No. 281.

Fed. R. Civ. P. 56(f) provides that that after giving notice and an opportunity to be heard, the court may "(1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute." As for the present motions, the court will rule on the issues briefed by the parties, but as outlined in greater detail in the conclusion section, the court will require Encon to show cause why the claims against Brian and Joseph Garrahan should not be dismissed for either failure to state a claim against them, lack of evidence to support a claim, or both.

### A. Fraudulent Misrepresentation

Under Texas law, to prevail on a fraud claim, the plaintiff must prove that: (1) the defendant made a material misrepresentation that was false; (2) the defendant knew the representation was false or made it recklessly as a positive assertion without knowing its truth; (3) the defendant intended the representation to induce the plaintiff to act upon the representation; and (4) the plaintiff actually and justifiably relied upon the representation and suffered injury.[36]

The Quantum defendants move for summary judgment on Encon's entire fraud claim. However, in their analysis section, they only take issue with the fourth element: They argue that Encon has not shown that it was injured as a result of the alleged fraudulent misrepresentations. The Quantum defendants argue that because the EPA reimbursed Encon for its bond premiums, Encon did not suffer damages resulting from premium payments. The Quantum defendants fail to cite any legal authority for their proposition that reimbursement would render a fraud claim inactionable because the injured party could no longer prove injury.

---

[36] *Ernst & Young, LLP v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001).

Although not exactly on point, Texas case law addressing the collateral source rule proves helpful. "The collateral source rule bars evidence that the injured person received from a collateral source payments which may have a tendency to mitigate the consequences of the injury."[37] The collateral source rule is an evidentiary rule that applies to the issue of damages, not the element of injury. But it naturally follows that if evidence of payment would be inadmissible as to the issue of damages, an injured party's tort claim would still be actionable even if the injured party was fully reimbursed by an entity other than the defendant.

The Quantum defendants also argue that Encon suffered no injury by placing funds into the reserve account because the Quantum defendants were within their contractual rights to demand the funds and to use them to pay for certain expenses. The Quantum defendants correctly note that the GAI permits the surety to demand payment of funds under certain circumstances. But neither party moves for an interpretation of the GAI. Moreover, the court cannot determine on the present record the circumstances surrounding the requests for the deposits and whether the Quantum defendants were within their contractual rights to demand those funds and then retain them. The court denies the Quantum defendants' summary judgment motion as to this claim.

The court also finds Encon is not entitled to summary judgment on this claim. Encon fails to come forward with evidence establishing that specific misstatements on the part of the Quantum defendants were reasonably relied upon by Encon to its detriment. Encon lists three alleged misrepresentations: (1) The Quantum defendants made the material misrepresentation that they were providing valid bonds to Encon backed by real property; (2) the Quantum defendants demanded reserve funds and submitted invoices showing how they spent those

---

[37] *Russell v. Dunn Equip., Inc.*, 712 S.W.2d 542, 547 (Tex. Ct. App. 1986).

reserve funds, but many of the charges regarding the reserve funds were excessive or

unnecessary; and (3) the Quantum defendants refused to return money from the reserve fund

after Encon had settled the bond claim with TL Enterprises.[38] As for statements concerning Ms.

Garrahan's ownership of the Nevada property, Texas recognizes a legal duty not to fraudulently

procure a contract.[39] "[W]ith a fraudulent inducement claim, the elements of fraud must be

established as they relate to an agreement between the parties."[40] As the court understands it,

Encon's theory regarding its dealings with the Quantum defendants is that Encon would have

never contracted with Ms. Garrahan to serve as a surety if Encon had known that Ms. Garrahan

did not own in fee simple the Nevada property pledged in support of the bonds. The evidence

Encon relies upon to demonstrate that Ms. Garrahan made misstatements concerning her

ownership of the Nevada property include: the affidavit of individual surety and the Quantum

defendants' correspondence with the EPA.[41] The problem is that these alleged misstatements

occurred *after* Encon had decided to use Ms. Garrahan as a surety. Therefore, Encon does not

come forward with evidence establishing it relied upon these alleged misrepresentations to its

detriment.

     Encon also fails to draw a link between how false charges regarding the reserve fund or

the Quantum defendants' failure to return the reserve fund in any way caused Encon to deposit

money into the reserve fund. Again, these alleged misstatements seem to concern events

---

[38] *See* Pl.'s Mot. for Summ. J. Against Defs. Linda Garrahan, Brian Garrahan, Joseph Garrahan, Quantum Partners, Inc., and 1st Capital Lending Fund, Inc., and Mem. in Supp. at 15 (ECF No. 289) (listing the alleged misrepresentations in support of the first element of fraud).

[39] *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46 (Tex. 1998).

[40] *Haase v. Glazner*, 62 S.W.3d 795, 798-99 (Tex. 2001).

[41] *See See* Pl.'s Mot. for Summ. J. Against Defs. Linda Garrahan, Brian Garrahan, Joseph Garrahan, Quantum Partners, Inc., and 1st Capital Lending Fund, Inc., and Mem. in Supp. at 15 (ECF No. 289) (citing Statement of Fact Nos. 18-21).

occurring *after* Encon had made the deposits into the reserve account. Encon has not demonstrated that false billing statements or the Quantum defendants' refusal to return the money deposited into the reserve fund were statements that Encon relied upon to its detriment. Summary judgment is denied as to this claim.

### B. Conversion

To establish a claim for conversion under Texas law, the plaintiff must prove that: "(1) the plaintiff owned or had legal possession of the property or entitlement to possession; (2) the defendant unlawfully and without authorization assumed and exercised dominion and control over the property to the exclusion of, or inconsistent with, the plaintiff's rights as an owner; and (3) the plaintiff suffered injury."[42] "If the defendant originally acquired possession of the plaintiff's property legally, the plaintiff must establish that the defendant refused to return the property after the plaintiff demanded its return."[43] Additionally, "[a]n action for conversion of money arises only where the money can be identified as a specific chattel, meaning it is (1) delivered for safe keeping; (2) intended to be kept segregated; (3) substantially in the form in which it is received or an intact fund; and (4) not the subject of a title claim by the keeper."[44]

Material issues of fact preclude summary judgment in favor of either party on this claim. The Quantum defendants correctly note that the GAI specifically provides for the creation of the reserve account to handle situations in which the surety potentially could be held liable, but

---

[42] *Fernandez v. T.D.C.J.*, 341 S.W.3d 6, 15 (Tex. App. 2010) (citing *United Mobile Networks, L.P. v. Deaton*, 939 S.W.2d 146, 147-48 (Tex. 1997)).

[43] *Id.* (citing *Presley v. Cooper*, 284 S.W.2d 138, 141 (Tex. 1955)).

[44] *Lawyers Title Co. v. J.G. Cooper Dev.*, --- S.W.3d ---, 2014 WL 535719, at *4 (Tex. Ct. Appt. Feb. 10, 2014) (quoting *Entm't Merch. Tech., LLC v. Houchin*, 720 F. Supp. 2d 992, 799 (N.D. Tex. 2010)).

under the section of the GAI titled, "Reserve Deposit," it also states that the surety has the right to retain collateral until it has been fully reimbursed for any liability incurred from certain claims, demands, damages, losses, expenses, and attorney fees for which the principal and indemnitors are liable. The GAI also provides that the surety can demand funds to cover the expenses of auditing Encon's records should Encon fail to provide certain financial information. Ms. Garrahan and her business entities have admitted that some of the charges in connection with the TL Enterprises claim reflect work that did not need to be performed or work for which Encon should not have been charged. There are also genuine issues of material fact regarding the amount of funds necessary for auditing expenses. The record fails to establish how the Quantum defendants spent all of the money deposited into the reserve account. Therefore, it is not possible on this record for the court to determine whether the Quantum defendants converted Encon's property. Both summary judgment motions are denied as to this claim.

### C. Civil Conspiracy

Under Texas law, the elements of civil conspiracy include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result."[45]

The Quantum defendants advance the same argument regarding damages already considered and rejected in the section addressing Encon's fraud claim. For the same reasons stated above, the court also rejects those arguments with regard to Encon's civil conspiracy claim. The court denies the Quantum defendants' summary judgment motion as to this claim. The court also denies Encon's summary judgment motion as to this claim. Conspiracy is

---

[45] *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

considered a derivative tort.[46] In other words, "to prevail on a civil conspiracy claim, the plaintiff must show that the defendant was liable for some underlying tort."[47] Encon has not conclusively demonstrated the Quantum defendants are liable for any of the above-discussed underlying torts.

### D. Joint Enterprise Theory of Liability

Joint enterprise is a theory involving derivative liability for a cause of action proven against another participant.[48] "Joint enterprise liability makes 'each party thereto the agent of the other and thereby to hold each responsible for the negligent act of the other.'"[49] The elements of a joint enterprise are: (1) an express or implied agreement among members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that common purpose among members of the group; and (4) an equal right to a voice in the common enterprise, which gives an equal right of control.[50]

Ms. Garrahan and her business entities have admitted they acted as a joint enterprise. Therefore, this matter is deemed established for the purpose of trial. However, Encon has failed to come forward with any evidence that supports its theory that Brian or Joseph Garrahan engaged in a joint enterprise with each other or with the other co-defendants. As previously discussed, the deemed admissions by the co-defendants do not bind Brian or Joseph Garrahan. Texas courts typically apply the joint enterprise theory of liability in the context of negligence

---

[46] *Bailey v. Smith*, No. 13-05-085-CV, 2006 WL 1360846, at *13 (Tex. App. May 18, 2006).

[47] *Baty v. ProTech Ins. Agency*, 63 S.W.3d 841, 864 (Tex. App. 2001).

[48] *In re Tex. Dep't of Transp.*, 218 S.W.3d 74, 78 (Tex. 2007).

[49] *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 613 (Tex. 2000) (quoting *Shoemaker v. Whistler's Estate*, 513 S.W.2d 10, 14 (Tex. 1974)).

[50] *Id.*

claims.[51] Although Encon originally asserted a negligence claim against co-defendant TBG, that claim has since been dismissed with prejudice.[52] If Encon seeks to have the court instruct the jury on its joint enterprise theory of liability, it should be prepared to present the court with Texas authority illustrating that this type of liability would be available for the claims for which Encon seeks to assert it.[53]

For these reasons, the court grants Encon's summary judgment motion on its theory of joint enterprise liability as to Ms. Garrahan and her business entities. For the purpose of trial, it is established that Ms. Garrahan and her business entities acted as a joint enterprise, and Encon need not present any further evidence establishing this theory as to these defendants; however, Encon must present authority showing that joint enterprise liability applies to the claims for which it seeks to assert it if Encon wants the court to instruct the jury on this theory. The court denies Encon's summary judgment motion on its theory of joint enterprise liability as to Brian and Joseph Garrahan. The Quantum defendants have not moved for summary judgment on this theory.

### E.  Declaratory Relief

Pursuant to 28 U.S.C. § 2201(a), the court "upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." Encon seeks a declaration that the GAI is not a valid and binding contract because it is not supported by consideration. For a contract to exist,

---

[51] *See, e.g., Shoemaker*, 513 S.W.2d at 16-17 (adopting the Restatement (Second) of Tort's statements regarding joint enterprise, which imputes liability to members of the of the joint enterprise "for physical harm to other persons caused by the negligence of any member").

[52] *See* Mem. and Order at 20-24, ECF No. 314.

[53] *See Seureau v. ExxonMobil Corp.*, 274 S.W.3d 206, 218 n.9 (Tex. App. 2008) (noting, but not deciding, the question of whether joint enterprise liability could apply to claims other than negligence).

there must be an offer, acceptance of that offer, and valid consideration.[54] "Consideration is a bargained for exchange of promises that consists of benefits and detriments to the contracting parties."[55] "It is quite elementary that the promise of one party is valid consideration for the promise of the other party."[56] "Mutual promissory obligations by the parties to the agreement furnishes sufficient consideration to constitute a binding contract."[57] "Lack of consideration occurs when the contract, at its inception, does not impose obligations on both parties."[58]

Encon argues the GAI was not supported by consideration because the consideration for Encon entering into the GAI was that Ms. Garrahan would issue payment and performance bonds supported by adequate collateral. But Ms. Garrahan has admitted the bonds were not properly secured because she pledged as collateral real estate that she did not own in fee simple. Because Encon received essentially nothing for entering into the GAI, Encon contends the GAI lacked consideration and is therefore invalid. As part of the deemed admissions, Ms. Garrahan and her business entities have admitted that Encon received nothing of value in exchange for executing the GAI.

Encon's argument confuses consideration with breach. A Texas appellate court explained the issue this way: "Failure of consideration . . . occurs when, because of some supervening cause after a contract is formed, the performance fails. . . . [T]here is a 'lack of consideration' where a purported contract lacks mutuality of obligation. Thus, there is a clear distinction

---

[54] *Federal Sign v. Tex. S. Univ.*, 951 S.W.2d 401, 408-09 (Tex. 1997) (superseded by statute on unrelated grounds).

[55] *Domingo v. Mitchell*, 257 S.W.3d 34, 39 (Tex. App. 2008).

[56] *Id.* (quoting *Tex. Farm Bureau Cotton Ass'n v. Stovall*, 113 Tex. 273, 253 (Tex. 1923)).

[57] *Id.*

[58] *Burges v. Mosley*, 304 S.W.3d 623, 628 (Tex. App. Jan. 20, 2010).

between 'lack of consideration' and 'failure of consideration.'"[59] The United States Supreme Court, comparing a plea agreement to a contract, reasoned that, "When the consideration to a contract fails—that is, when one of the exchanged promises was not kept" that does not mean there was not a valid and binding contract; it means "the contract was broken."[60]

The record lacks sufficient evidence for the court to determine whether the issuance of the bonds was consideration for Encon executing the GAI. But assuming this was the case, Ms. Garrahan's promise of performance is sufficient consideration. The fact that Ms. Garrahan may not have fulfilled her promises means she potentially breached a contract. It does not mean the GAI is invalid because it was not supported by consideration. The court agrees with the Quantum defendants that Encon has failed to establish a cause of action against the Quantum defendants for a declaration that the GAI is unenforceable because of a lack of consideration.

As included in the pretrial order, Encon's claim for declaratory relief encompasses two theories: First, "despite defendants' threats to the contrary, Encon was never in default on its contracts with the EPA and/or defendants."[61] Second, and alternatively, "the contracts between Encon and defendants are unenforceable due to a lack of consideration."[62] The Quantum defendants move for summary judgment on both theories. The court grants the Quantum defendants' motion on Encon's second theory for the reasons stated above. However, for the reasons outlined in the section discussing Encon's conversion claim, material issues of fact preclude summary judgment in favor of either party on Encon's first theory—that Encon was not

---

[59] *Id.*

[60] *Puckett v. United States*, 556 U.S. 129, 137 (2009).

[61] Pretrial Order at 19, ECF No. 281.

[62] *Id.*

in default on its contracts with the EPA or the defendants. The Quantum defendants' summary judgment motion is denied as to this theory. Encon's summary judgment motion is denied in full as to this claim.

## F. Breach of Contract

Under Texas law, the elements of breach of contract are "(1) a valid contract; (2) the plaintiff performed or tendered performance; (3) the defendant breached the contract; and (4) the plaintiff was damaged as a result of the breach."[63] "A breach of contract occurs when a party fails or refuses to do something it has promised to do."[64]

Material issues of fact preclude summary judgment in favor of either party on this claim. The Quantum defendants move for summary judgment on the grounds that Encon has not established that it suffered damages. For the same reasons discussed in more detail above, the court rejects this argument. The fact that Encon was reimbursed by the EPA for its bond premiums does not mean a breach-of-contract claim would be rendered inactionable. Furthermore, even if the Quantum defendants were legally entitled to demand that Encon place certain payments into the reserve account pursuant to the GAI, there are genuine issues of material fact concerning where those payments went and whether the Quantum defendants were legally entitled to withhold from Encon the entire amount of funds Encon deposited into the reserve account.

Encon also has failed to show it is entitled to summary judgment in its favor on this claim. Encon contends the Quantum defendants agreed to provide valid bonds in exchange for Encon paying premiums and signing the GAI. Encon fails to point to any evidence establishing

---

[63] *McLaughlin, Inc. v. Northstar Drilling Techs., Inc.*, 138 S.W.3d 24, 27 (Tex. App. 2004).

[64] *Bubbajunk.com v. Momentum Software, Inc.*, No. 03-03-00590-CV, 2004 WL 904081, at *4 (Tex. App. Apr. 29, 2004).

this agreement existed. In fact, the court is unclear at this juncture as to what type of breach-of-contract theory upon which Encon is proceeding. Encon makes no mention in the pretrial order of an implied contract—nor does Encon come forward with evidence supporting this notion. But Encon also fails to point the court to specific provisions of a written contract the Quantum defendants breached. For example, Encon contends the Quantum defendants breached its contract with Encon by providing invalid bonds to Encon and by failing to return the reserve funds. In support of this statement, Encon cites its Statement of Fact No. 51, which states, "The Individual Surety Bonds issued to Encon International, Inc. at issue in this case were invalid." The statement relies upon the deemed admissions. Again, those admissions are only binding as to Ms. Garrahan and her business entities. Moreover, the deemed admissions are insufficient to establish that Ms. Garrahan and her business entities breached *contractual duties* owed to Encon. The fact that Ms. Garrahan did not own the property in fee simple falls far short of establishing that: (1) that Ms. Garrahan was obligated, as part of the contract with Encon, to own the property in fee simple or that (2) Ms. Garrahan and her business entities were contractually obligated to return the funds deposited into the reserve account. For these reasons, the court denies both Encon's and the Quantum defendants' summary judgment motions on Encon's breach of contract claim.

### G.  Texas Deceptive Trade Practices Act

Encon alleges the Quantum defendants violated various provisions of the Texas Deceptive Trade Practices Act (DTPA), Tex. Bus. & Com. Code Ann. § 17.41-17.63. The Quantum defendants argue summary judgment is appropriate because the DTPA does not apply to the types of transactions at issue in this case. Section 17.49 sets forth exemptions to the DTPA. Among other things, the section provides for an exemption involving large transactions.

It states, "[n]othing in this subchapter shall apply to a cause of action arising from a transaction, a project, or a set of transactions relating to the same project, involving total consideration by the consumer of more than $500,000, other than a cause of action involving a consumer's residence."[65]

It is uncontroverted that Encon paid more than $500,000 in total bond premiums throughout the base year and the option years of the contract. It is also uncontroverted that Encon paid more than $500,000 into the reserve account to cover attorney retainer, legal fees, and audit fees. But the bond premiums for the base year and the respective option years do not, individually, exceed $500,000, nor do the individual payments into the reserve account. For this reason, Encon argues the exemption does not apply. Neither party presents—nor could the court locate—any Texas case law construing the large-transactions exemption in a case entirely factually analogous to this one. But what is clear is that Texas courts have broadly construed the large-transactions exemption, holding that sets of transactions relating to the same project should be valued collectively for the purpose of determining whether the exemption applies.[66] This construction is in line with the legislative intent, which "is to maintain the DTPA as a viable source of relief for consumers in small transactions and to remove litigation between businesses over large transactions from the scope of the DTPA."[67] Under this line of cases, it is clear that

---

[65] Tex. Bus. & Com. Code Ann. § 17.49(g).

[66] See, e.g., Geodominion Petroleum, Inc. v. Boone Exploration, Inc., No. 13-06-00430-CV, 2008 WL 3521966, at *5 (Tex. App. Aug. 14, 2008) (applying the exemption to multiple transactions); E. Hill Marine, Inc. v. Rinker Boat Co, 229 S.W.3d 813, 820 (Tex. App. 2007) (finding that the large-transactions exemption applied when a plaintiff had attempted to avoid the exemption by suing on one transaction between the parties but not additional transactions); Citizens Nat'l Bank v. Allen Rae Invs., Inc., 142 S.W.3d 459, 473 (Tex. App. 2004) (valuing transactions collectively). See also Space Maker Designs, Inc. v. Weldon F. Stump and Co., No. 3:02-CV-0378-H and 3:02-2239-H, 2003 WL 21414726, at *2 (N.D. Tex. June 16, 2003) (finding that the large-transactions exemption applied to a set of three contracts that together contemplated consideration in excess of $500,000).

[67] E. Hill Marine, 229 S.W.3d at 820.

the transactions relating to each of the payment and performance bonds should be valued together, and the individual deposits into the reserve account should also be valued together. Because the large-transactions exemption bars Encon's DTPA claim, the court grants summary judgment in favor of the Quantum defendants.

The DTPA provides for an award of attorney fees and court costs for a DTPA action that "was groundless in fact or law or brought in bad faith, or brought for the purpose of harassment."[68] The Quantum defendants argue that because Encon's DTPA claim is "clearly exempted" by the plain language of the large-transactions exemption, the court should award the Quantum defendants attorney fees and costs. That request is denied. Although the court finds the large-transactions exemption applies to Encon's DTPA claim against the Quantum defendants, it also recognizes there is no Texas case law that addresses a situation entirely factually analogous to the one here. As a result, the court does not find Encon's DTPA claim to be groundless or brought in bad faith or for the purpose of harassment.

### H. Requirement to Post a Bond

On December 6, 2011, the court denied Encon's motion for an order requiring the Quantum defendants to post a bond pursuant to K.S.A. 2003(a). Encon did not file a motion for reconsideration of that order, and the time to do so has passed. In the summary judgment briefing, Encon advances the same arguments that were already considered and rejected by the court. To the extent Encon seeks reconsideration of the court's prior order, it has not specified why it waited more than a year to seek relief. Because of this, and because Encon is advancing the same arguments previously considered and rejected by the court, Encon's request for bond is denied.

---

[68] Tex. Bus. & Com. Code Ann. § 17.50(c).

# I. Conclusion

The court denies both parties' summary judgment motions as to Encon's fraud claim, conversion claim, civil conspiracy claim, and breach-of-contract claim. At trial, Encon must come forward with evidence supporting each element of these claims as to each remaining defendant. The court grants Encon's summary judgment motion on its theory of joint enterprise liability as to Linda Garrahan, Quantum Partners, and 1st Capital Lending Fund. For the purpose of trial, it is established that Ms. Garrahan and her business entities acted as a joint enterprise, and Encon need not present any further evidence establishing this theory as to these defendants. However, Encon must present authority showing that joint enterprise liability applies to the claims for which it seeks to assert it if Encon wants the court to instruct the jury on this theory. The court denies Encon's summary judgment motion on its theory of joint enterprise liability as to Brian and Joseph Garrahan. The Quantum defendants have not moved for summary judgment on this theory.

The court grants summary judgment in favor of the Quantum defendants on Encon's claim under the Texas Deceptive Trade Practices Act. This claim is dismissed with prejudice. The court also grants in part the Quantum defendants' summary judgment motion as to Encon's claim for a declaration that the GAI was not a valid and enforceable agreement. Material issues of fact preclude summary judgment in favor of either party on Encon's claim for a declaration that it was not in default on its contracts with the EPA or the defendants.. The court also grants summary judgment in favor of the Quantum defendants regarding Encon's request, styled as a "claim," that the Quantum defendants post a bond pursuant to K.S.A. 2003(a).

In their summary judgment motion, the Quantum defendants do not specifically raise the issue of the absence of evidence supporting claims asserted against Brian and Joseph Garrahan.

Reviewing the present record, however, has left the court with serious concerns about whether Encon has even stated cognizable claims against these individuals. It is unclear which, if any, false statements Brian or Joseph Garrahan made to Encon that would support a fraud claim. It is also unclear what contract Encon alleges existed between Encon and Brian or Joseph Garrahan or how Encon contends these individuals breached their contractual duties. The present record is also void of evidence that would seem to support Encon's claims against these individuals. For these reasons, the court orders that within fourteen (14) days from the date of this order, Encon shall file a supplemental brief that explains: (1) how it has stated a valid claim for relief against Brian and Joseph Garrahan as to each of the remaining claims and legal theories, including the theory of joint enterprise, and (2) Encon shall also present sufficient evidence from which a rational trier of fact could conclude Encon is entitled to judgment on those claims. Alternatively, the court would accept Encon's voluntarily dismissal of these parties.

Accordingly,

**IT IS THEREFORE ORDERED** that Encon International, Inc.'s motion for summary judgment (ECF No. 289) is granted in part and denied in part.

**IT IS FURTHER ORDERED** that the Quantum defendants' motion for summary judgment motion (ECF No. 290) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 28th day of March, 2014, at Topeka, Kansas.


<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge